**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | :: | CRIMINAL ACTION |
| v. | :: | |
| KEITH CAMPBELL | :: | NUMBER 17-26-RGA |

**MOTION TO SUPPRESS STATEMENT**

TO THE HONORABLE RICHARD G. ANDREWS, JUDGE OF THE SAID COURT:

Defendant KEITH CAMPBELL, by his attorney Mark S. Greenberg, Esquire, respectfully represents:

1. Campbell has been charged in an Indictment with kidnaping, in violation of 18 U.S.C. §1201(a)(1) (Count One); Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count Two); and conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count Three).

2. On September 2, 2015, Campbell, who was in custody on an unrelated Delaware state court matter, was transported from the Howard R. Young Correctional Institution to Delaware State Police Troop 2, by FBI Special Agent Scott Duffey and a Delaware State Trooper for questioning on the instant matter.

3. SA Duffey, who led the interrogation, gave Campbell his Miranda rights which Campbell invoked after listening to Duffey for a period of approximately 40 minutes. Questioning ceased immediately. This first statement was video recorded.

4. Over six months later, on March 10, 2016, SA Duffey arranged for Campbell to be

1

       transported to the New Castle County Courthouse so Duffey could interview Campbell a second time. SA Duffey arranged for this second interview after receiving a phone call from Campbell's mother.

5. SA Duffey, along with two detectives, one from the Delaware State Police and one from the Delaware County, PA CID, interrogated Campbell inside of a conference room in the basement of the courthouse while Campbell was in handcuffs and leg shackles.

6. SA Duffey did not Mirandize Campbell nor tell him that he did not have to answer any questions. Campbell gave a statement which Duffey did not record or take notes on. Fourteen months later, Duffey, at the request of the AUSA Falgowski, memorialized the substance and circumstances underlying the taking of the statement in an FBI 302 report.

7. The government, in a June 11, 2018 phone call, advised Campbell that it intends to introduce this statement in its case-in-chief.

8. Campbell's second statement to Duffey should be suppressed because it was not preceded by Miranda warnings.

WHEREFORE, Campbell respectfully requests that this Court to enter an Order granting the instant Motion to Suppress Statement.

                                              Respectfully submitted:
                                              /s/ Mark S. Greenberg

                                              _____
                                              MARK S. GREENBERG, ESQUIRE
                                              Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : : | CRIMINAL ACTION |
| v. | : : | |
| KEITH CAMPBELL | : : | NUMBER 17-26-RGA |

**MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS STATEMENT**

To protect the Fifth Amendment right against self-incrimination, the Supreme Court in Miranda v. Arizona, 384 U.S. 436 (1966), ruled that police may not conduct a custodial interrogation without first administering the now-familiar Miranda warnings, which include the right to remain silent and the right to the presence of an attorney. Miranda safeguards are required when a suspect is "(1) 'in custody' and (2) subject to 'interrogation' by the Government." Id. at 444. A suspect is in custody when "there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (citation omitted). An "interrogation" has been defined as "(a) conduct intentionally designed to evoke a confession, as well as (b) any conduct an officer should reasonably have foreseen would elicit an inculpatory response." Rhode Island v. Innis, 446 U.S. 291, 301 (1980)). The term "interrogation" includes express questioning and any words or actions on the part of the police "that the police should know are reasonably likely to elicit an incriminating response." Id.

The Supreme Court has held that a prisoner is not automatically in "custody" within the meaning of Miranda simply because he is in prison. Howes v. Fields, 565 U.S. 499 (2012).

> When a prisoner is questioned, the determination of custody should focus on all of the features of the interrogation. These include the language that is used in summoning the

1

prisoner to the interview and the manner in which the interrogation is conducted. An inmate who is removed from the general prison population for questioning and is "thereafter ... subjected to treatment" in connection with the interrogation "that renders him 'in custody' for practical purposes ... will be entitled to the full panoply of protections prescribed by Miranda."

Id. at 514 (citations omitted).

Whether a prisoner is "in custody" within the meaning of Miranda requires a fact-specific determination. Howes is instructive in this regard. There, the defendant, a Michigan state prisoner, was escorted from his prison cell by a corrections officer to a conference room where he was questioned by two sheriff's deputies about criminal activity he had allegedly engaged in before coming to prison. The defendant was not given Miranda warnings or advised that he did not have to speak with the deputies. The defendant was told more than once that he was free to leave and return to his cell during the course of his questioning which lasted for between five and seven hours. The deputies were armed, but the defendant remained free of restraints. The defendant was offered food and water. The conference room door was sometimes open and sometimes shut. Although the defendant periodically stated that he no longer wanted to talk to the deputies, he did not ask to go back to his cell. The defendant eventually confessed and had to wait an additional 20 minutes before he was escorted back to his cell. Howes v. Fields, 565 U.S. at 502-503.

Although the Supreme Court found that some factors reflected a custodial setting, including a "sharp tone" by one of the deputies, the duration of the interrogation, the fact that the deputies were armed and the fact that the defendant was kept up past his bedtime, the Court concluded that these factors were outweighed by others, rendering the questioning non-custodial:

> Most important, [defendant] was told at the outset of the interrogation, and was reminded again thereafter, that he could leave and go back to his cell whenever he wanted. Moreover, [defendant] was not physically restrained or threatened and was interviewed in a well-lit, average-sized conference room, where he was "not uncomfortable." He was offered food and

> water, and the door to the conference room was sometimes left open.. "All of these objective facts are consistent with an interrogation environment in which a reasonable person would have felt free to terminate the interview and leave."

Howes v. Fields, 565 U.S. at 515 (citations to record omitted).

By contrast, Campbell was "in custody" when the second interrogation took place in March 2016. First, Duffey did not give Campbell his Miranda warnings before questioning. Second, the interrogation took place in the presence of three law enforcement agents. Third, Campbell was not in his familiar prison surroundings when the second interrogation took place and was never told that he was free to leave or not respond to questions. Rather, Campbell was interrogated in a closed basement conference room of the New Castle County Courthouse. Fourth, Campbell was in handcuffs and shackles during questioning. Unlike inside the Howard R. Young Correctional Institution, where Campbell's freedom of movement within the confines of his cell block is basically unrestricted, Campbell's freedom of movement was totally restricted in the unfamiliar conference room where the second interrogation took place.

That Campbell's mother may have called Duffey prior to the second interrogation to arrange a meeting did not constitute a waiver of Campbell's Miranda rights. An accused who has invoked his Miranda right to counsel may not be subject to further interrogation unless the accused himself initiates further communication, exchanges, or conversations with the police. Edwards v. Arizona, 451 U.S. 477, 484–85 (1981). Even where the questioning is initiated by the accused, the burden remains upon the prosecution to show that subsequent events indicated that the accused has waived the Fifth Amendment right to have counsel present during the interrogation. Oregon v. Bradshaw, 462 U.S. 1039, 1044 (1983).

Here, over six months passed between the two interrogations. This belies any suggestion that

Campbell's invocation or knowledge of his <u>Miranda</u> rights six months earlier was fresh in his mind. And, given the circumstances surrounding the interrogation, including the restraints, number of interrogating officers and *in cognito* location of the interrogation, it cannot be said that Campbell's initiation of the interrogation took him out of a custodial interrogation setting.

      SA Duffey knew that any statement Campbell gave at the second interrogation needed to be preceded by <u>Miranda</u> warnings for it to be admissible at trial. This explains why Duffey neither recorded the statement, took notes on the statement or prepared a contemporaneous 302 report memorializing the circumstances of the statement until fourteen months later on May 17, 2017 at the request of government counsel. Accordingly, any statement taken from Campbell on March 10, 2016 must be suppressed.

      Respectfully submitted:
      /s/ Mark S. Greenberg

      _____
      MARK S. GREENBERG, ESQUIRE

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : : | CRIMINAL ACTION |
| v. | : : | |
| KEITH CAMPBELL | : : | NUMBER 17-26-RGA |

**ORDER**

AND NOW, this         day of         2018, it is hereby ORDERED that defendant's motion to suppress statement is granted.

BY THE COURT:

_____